## WILSON, *Plaintiff in Error* v. WEIL.

**Damages, Speculative and Remote:** A LEASE of an opera house with its scenery and appurtenances, contained a stipulation that if the lessee should, during the term, pay all back rents accrued under a former lease of the same premises, they should be restored to him under that lease with all the rights and immunities thereof. The lessee was never put in possession under the new lease, and never paid up the back rents. In a suit against the lessor on the new lease for withholding possession, the lessee claimed to recover the value of the old lease, as well as the new, on the ground that by withholding the possession the lessor had deprived him of the means of earning the money to pay up the back rents, and had thus prevented the restoration of the old lease; *Held*, that this was purely speculative and too remote to constitute an element of damages.

### *Error to St. Louis Circuit Court.*

The case was tried before Hon. Jas. J. Lindley, one of the judges.

*F. J. Bowman* for plaintiff in error.

*H. N. Hart* and *Krum & Madill* for defendant in error.

NAPTON, J.—In 1864, Weil, being the owner of a lot in St. Louis, at the corner of Fifth and Pine, contracted with Wilson and his associate, Morris, to put up an opera house, and to let them occupy it for ten years from the date of its completion, at a rent of $6,000 per annum. As Wilson and Morris were to advance $10,000 towards the expense of the building, the last twenty months of the ten years were agreed to be rent free. The $10,000 was advanced, the house was built, and Wilson, who shortly after the contract, bought out his associate, Morris, continued in the occupation of the building till the spring of 1869. Being then behind hand in paying the rent, Weil instituted proceedings to get possession and recover the back rents due, and ultimately got a judgment against Wilson in 1870

for $3,994.67. Previous to this, in March, 1869, Weil and Wilson made the following agreement:

"It is hereby agreed by and between Joseph Weil and Frederick Wilson, as follows: 1st. Fred Wilson agrees to pay Jos. Weil the sum of $83.33 weekly, in advance, for the use and occupation of the premises known as ' Wilson's Opera House,' with all the scenery and appurtenances therein contained and used in the minstrel and theatrical business, said rental to be for the period of six months from the date hereof, or until the 25th September, 1869. Should the said Wilson fail or refuse to pay said weekly rent as stipulated, for the period of two consecutive weeks, then he shall, upon written notice, restore said premises to Joseph Weil, free from all recourse or incumbrance whatever. It is further agreed that if said Wilson shall pay, or cause to be paid, all back rent accrued under the lease of said premises, within the period above named, the said premises shall be restored to him under the lease, with all the rights and immunities thereof. It is also agreed that said weekly rent shall commence from the date said Wilson shall return from New Orleans, on or before the 17th of May, 1869, and that during the absence of said Wilson, said Weil shall have control of said opera house for the purpose of renting the same, and all rent received therefor shall be applied on account, for the payment of the back rent due from said Wilson. Witness our hands and seals this 26th day of March, 1869.

"FRED WILSON, [SEAL.]
"JOSEPH WEIL, [SEAL.]"

The present action is brought to recover damages for an alleged breach of this contract by the defendant Weil, in refusing to deliver to Wilson the opera house, on his return from New Orleans, in May, and the damages claimed are not merely the value of this lease of 1869, but the value of the prior lease of 1864. The defense, on the part of Weil was, that this obligation of March, 1869, was in fact never delivered to Wilson, nor was it designed to be

delivered unless Wilson remitted during his Southern tour a considerable sum of money, which it is alleged in the answer he failed to do; and further, that Wilson never paid in advance, as the contract required, the weekly rent as agreed on, nor offered to pay it. The testimony in regard to these issues is totally immaterial to the decision of the writ of error now before us, because the instructions given by the judge who presided at the trial on both sides, are conceded to be correct, and the finding of the jury on conflicting evidence cannot be disturbed here.

The only point made in this court by the plaintiff in error is the refusal of the circuit court to give a series of instructions, which would authorize the jury, in the event of finding a breach of this contract of 1869 by the defendant, to give the plaintiff not only the immediate damage sustained by the plaintiff's loss of the possession from the 17th of May to the 25th of September, 1869, but the market value of the prior lease of 1864. This agreement of March 26th, 1869, is an exceedingly obscure document. Its provisions are contradictory, inconsistent, and to some extent, unintelligible. We may form a reasonable conjecture, after reading 500 pages of the testimony taken at the trial, as to what the parties meant—at least the court that tried the case seems to have given the paper a construction in which both parties acquiesced, and therefore we are relieved from the necessity of venturing any conjectures of our own on the subject. In regard, however, to the lease of 1864, and the conditions on which it was to be restored, this agreement of 1869 seems plain enough: " It is further agreed that if said Wilson shall pay, or cause to be paid, all back rent accrued under the lease of said premises, within the period above named, the said premises shall be restored to him under the lease, with all the rights and immunities thereof." Assuming that the lease here spoken of was that of 1864, there was no allegation in the petition that these back rents had been paid, or offered to be paid—nor was there any proof at the trial. Indeed, there

is no pretense of any such offer, and the position of the plaintiff is that the failure to get possession in May deprived the plaintiff of the means by which he proposed to pay these back rents, and therefore the value of this lease which he failed to get through fault of defendant, should have been estimated by the jury in their assessment of damages. Such damages we regard as too remote and purely speculative. The clause we have copied, on which the claim is based, is, in our opinion, entirely independent of the six months lease, and the plaintiff, on complying with it, could have reinstated himself under the original lease—whether he obtained the money by the profits of the establishment during the possession acquired under the last contract, or from any other source. Whether the lease of 1864 was worth anything in 1869, or not, is a mere matter of speculation. Its value depended on contingencies which no jury could estimate, and the testimony on the trial sufficiently shows this. For although the plaintiff declared it was worth $15,000, not another witness was produced who did not consider it worthless—and that the plaintiff and defendant so regarded it, this agreement of 1869 reducing the rent from $6,000 a year to $33.33 a week, is quite sufficient proof. But however this may be, the plaintiff had only to pay up the back rents in order to reinstate himself under the old lease, and if it was worth $15,000 a year, it is strange that he should have neglected so plain and simple a mode of testing the accuracy of his judgment. We think the circuit court committed no error in refusing instructions in regard to the value of the lease of 1864, and therefore the judgment is affirmed.

AFFIRMED.